539 A.2d 424

**Brenda SHUTTER, Appellant,**

v.

**Thomas V. REILLY, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 3, 1987.

Filed March 14, 1988.

252

Chere Winnek Shawer, Indiana, for appellant.

Before BROSKY, TAMILIA and KELLY, JJ.

KELLY, Judge:

Appellant/mother raises this appeal from a trial court order granting appellee/father's petition to modify (reduce) his child support obligation. Appellant alleges the trial court erred by failing to use the appropriate county support guidelines in fashioning its award, and in excluding from the list of appellant's expenses mortgage, utility and automobile payments. We agree with appellant that the trial court erred in both instances. Accordingly, we vacate the order of support and remand this matter to the trial court for recomputation of the support award in accord both with the county guidelines and the formula set forth in *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984).

## FACTS AND PROCEDURE

Appellant, Brenda L. Shutter, and the appellee, Thomas V. Reilly, were married in 1971 and divorced in 1984. Two children were born during the marriage; appellant retained custody of both children upon divorce. Appellee originally paid $1,000.00 monthly in child support pursuant to a property settlement agreement incorporated into the divorce decree.

This support provision was modified on March 12, 1986 pursuant to a consent order; appellee's monthly obligation was reduced to $500.00. That monthly amount was scheduled to increase to $600.00 commencing July 1987, and to $700.00 in January 1989.

One of the two children moved in with appellee sometime in the autumn of 1986. Appellee then filed, in November 1986, a petition for modification (reduction) of child support payments based upon this changed circumstance of the children's living arrangements. A hearing on the petition was held before the Domestic Relations officer on December 16, 1986, and an order was issued on December 18, 1986; this order reduced appellee's support obligation by one-half to $250.00 monthly. Appellant appealed this order and requested a hearing before the court. Pa.R.C.P. 1910.-11(f). The hearing was held on January 13, 1987; the court issued its order on February 13, 1987 affirming the previously modified support order of $250.00 monthly. The court rather simplistically based its affirmance in part on the fact that appellant was supporting one child rather than both children. This appeal from that order was timely filed.

Appellant contends: (1) the trial court abused its discretion in setting the award of support without considering and making reference to the support guidelines of Indiana County; and (2) the court erred in refusing to consider the cost of housing, utilities and transportation as part of the necessary and reasonable expenses of raising a child. We agree with appellant with respect to both contentions and, therefore, we vacate the order of support, and remand to the trial court for proceedings consistent with this opinion.

I.

A.

At the outset, we note that there were material changes in circumstances which would justify modifying the support order. In a petition to modify a support order, the petitioner carries the burden of proving by competent evi-

dence that a material and substantial change of circumstances has occurred since the entry of the original support order. *Palmatier v. MacCartney,* 365 Pa.Super. 300, 529 A.2d 518 (1987); *Koller v. Koller,* 333 Pa.Super. 54, 57, 481 A.2d 1218, 1220 (1984) (citing *Commonwealth ex rel. Vona v. Stickley,* 287 Pa.Super. 296, 430 A.2d 293 (1981)). The trial court must consider all pertinent facts and base its decision upon facts appearing in the record which indicate whether the petitioner did or did not meet the burden of proof as to changed circumstances. *Koller, supra,* 333 Pa.Superior Ct. at 57–58, 481 A.2d at 1220; *Commonwealth ex rel. Scanlon v. Scanlon,* 311 Pa.Super. 32, 457 A.2d 98 (1983). We agree with the trial court that appellee established a sufficient change in circumstances by reason of the fact that his son had moved in with him. Thus, reconsideration of the support order was appropriate. We note that appellant introduced evidence to demonstrate that her circumstances had also changed in that her household expenses had increased since entry of the consent order.

## B.

■ We agree with appellant that the trial court abused its discretion in entering a modification of the support order based upon the established change in circumstances without referring on the record to the support guidelines promulgated by Indiana County. These guidelines, effective January 6, 1986, were formulated in response to 23 Pa.C.S.A. § 4322, which provides:

**§ 4322. Support guidelines**

The courts of common pleas shall develop guidelines for child and spousal support so that persons similarly situated shall be treated similarly. The guidelines shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guidelines shall place primary emphasis on the net incomes and earning capaci-

ties of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.

Although our standard of review is such that we will not overturn a child support order unless the court abused its discretion in fashioning the award, such abuse will be found where there is insufficient evidence to sustain the award or where the law is overridden or misapplied. *Fee v. Fee*, 344 Pa.Super. 276, 496 A.2d 793 (1985). The support guidelines are to be considered both in entering the original support order, and in entering a modified order. *Palmatier v. MacCartney, supra; Reitmeyer v. Reitmeyer*, 355 Pa.Super. 318, 513 A.2d 448 (1986). The guidelines are to be consulted by the court so that the suggested amount of support is, at a minimum, given due consideration and so there may be uniformity of awards for persons similarly situated. In this case, the trial court clearly failed to apply the law embodied in Section 4322. This was error.

■ The dissent states that: "If the Order appears well considered, fair and nonconfiscatory, it should stand, notwithstanding a failure of the trial court to refer to the guidelines on the record." (At 434). We find that viewpoint to be misguided; the statute is clearly worded as a *mandatory* provision (e.g. "The courts ... *shall* develop.... the guidelines *shall* be based ... The guidelines *shall* place primary emphasis ..."). If we were to follow the dissent's suggested analysis, we would essentially render the statute a nullity. We would allow courts to ignore the very guidelines they are mandated to promulgate. This we decline to do. Rather, we presume, as is our duty, that the legislature intended the statute to be given its full effect. *See* 1 Pa.C.S.A. § 1922(2).

Accordingly, we must remand the case for appropriate calculation of the support needs of appellant's custodial child, and entry of a new support order. *Reitmeyer, supra; see also Forry v. Forry*, 359 Pa.Super. 602, 519 A.2d 516 (1986); *Riess v. DeLuca*, 353 Pa.Super. 622, 510 A.2d 1239 (1986).

## C.

Appellant relies in part upon the case *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984), in support of her contention that the amount awarded to her was inadequate. Appellant's analysis is correct. The interplay of the application of both *Melzer* and the county guidelines promulgated pursuant to Section 4322 has recently engendered some discussion among bench and bar, as the dissent notes. Initially, we reiterate that:

> In *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984), a plurality of our Supreme Court, per Justice Larsen, established guidelines for the calculation of child support awards. *Id.,* 505 Pa. at 472–75, 480 A.2d at 996.

> \* \* \* \* \* \*

> *However, a majority of the Court eschewed strict mechanical formulas and endorsed a flexible approach in these areas. Id.,* 505 Pa. at 477–78, 480 A.2d at 999 (Flaherty and Hutchinson, JJ. concurring).

A majority of the Court did agree that each parent's support obligation should be determined based upon the reasonable needs of the children and the parent's reasonable expenses and earning capacities. The members of the Court differed over whether these criteria should be applied via a mathematical formula or whether we should trust in the judgment and discretion of our trial courts.

In interpreting *Melzer,* the Superior Court has adhered to a middle course. We have recognized the validity of the *Melzer* formula but at the same time we have remained aware of the majority's admonition that the formula should not be inflexibly applied. Therefore, we have required trial courts to calculate the *Melzer* formula but we have allowed them to adjust the resulting support obligation if deviation from the formula is warranted under the particular circumstances. *Riess v. DeLuca,* 353 Pa.Super. 622, 625, 510 A.2d 1239, 1241 (1986); *Reitmeyer v. Reitmeyer,* 355 Pa.Super. 318, 324, 513 A.2d 448, 452 (1986).

*DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508 (1987). (Emphasis added). Thus, the *Melzer* formula must be calculated in each support case and referred to by the court if it decides to deviate therefrom.

Section 4322 was promulgated after *Melzer* but it has not superseded *Melzer.* This Court has commented that "the considerations set forth in the statute are precisely those which *Melzer* held that the courts of common pleas must use in formulating support orders." *Reitmeyer, supra,* 355 Pa.Superior Ct. at 325 n. 3, 513 A.2d at 452 n. 3. Moreover, Section 4322 has been called a legislative endorsement of the *Melzer* approach. *Ryan v. DeLong,* 371 Pa.Super. 248, 251, 538 A.2d 1, 2 (1987) (Section 4322 "requires an individualized determination.... These were the very concerns of the *Melzer* court." 371 Pa.Superior Ct. at 252, 538 A.2d at 3 (but note: county guidelines not consistent with *Melzer* are presumptively invalid).

The dissent states that our holding conflicts with *Ryan.* We find no conflict but only accord between ourselves and the *Ryan* panel. We conclude that *Ryan, supra,* when read in conjunction with *Palmatier, supra, Reitmeyer, supra* and *DeWalt, supra,* mandates that both *Melzer* and the county guidelines be considered by courts fashioning support awards. Thus, on remand, the court is to follow a two-part analysis; first, the county guidelines which were promulgated pursuant to Section 4322 and are consistent with *Melzer* must be considered in order to assure basic uniformity of the award with awards for other "persons similarly situated;" second, the amount suggested by the guidelines must also be compared to the individualized *Melzer* formula so that the court finally awards an amount tailored to the parties' individual circumstances. 42 Pa.C. S.A. § 4322; *Melzer, supra.*

■ Thus, *both Melzer*'s formula and the county support guidelines consistent with *Melzer* are to be considered in entering the original support order, and in entering any subsequent modification. *Accord Ryan, supra; Reitmey-*

*er, supra.* As the court failed to utilize either the county guidelines or *Melzer,* it erred.

## II.

### A.

Appellant's second contention is that the trial court erred in refusing to include a one-third share of the cost of housing, utilities, and transportation as necessary and reasonable expenses in raising appellant's custodial child. We agree the court erred in its support calculation and further note that the court failed to even refer to the *Melzer* formula in its calculation of appellee's support obligation.

Specifically, the court reviewed the evidence presented by appellant, as follows:

> In seeking to show what [sic] the monthly cost of providing for their daughter had changed, plaintiff presented testimony as to the daughter's one-third contribution to all of the general housekeeping expenses such as; the mortgage on the family home (R. 19), the electric bill (R. 19–20), the gas bill (R. 20), the phone bill (R. 20), water and sewer bill (R. 20), homeowners insurance (R. 20), automobile insurance (R. 20), gas for the car (R. 21), car repair expenses (R. 22) and taxes (R. 24). These expenses were added to sums expended by the plaintiff on items such as; doctors and psychiatrist bills (R. 22), medical bills (R. 23), clothing (R. 23), food (R. 23), house repairs (R. 23), legal fees (R. 23), piano lessons (R. 23), lunch money (R. 24), and girl scout dues (R. 24) to reach a monthly total of seven hundred and ninety-five dollars and eighty-four cents ($795.84), an increase of five hundred and seventy-five dollars and eighty four cents ($575.84) over the prior order issued on March 12, 1986. Thus, the monthly amount sought by plaintiff, in accordance with the concept that child support is an equal obligation of mother and father, *Roberts v. Bockin,* 315

Pa.Super. 52, 461 A.2d 630 (1983); is three hundred and ninety-seven dollars and forty-two cents ($397.42).

(Trial Ct.Op. at 3–4). However, the trial judge concluded: This Court does not agree with plaintiff's inflated amount which is partially due to her attempt to attribute everyday unavoidable bills and payments which would have been incurred absent the presence of the daughter. *Items such as mortgages, taxes, car insurance, and gas and repairs for the car are just not natural or reasonable expenses incurred in the raising of a ten year old child.*

(Trial Ct.Op. at 4). (Emphasis added).[1]

■ The law regarding what constitutes appropriate child support is clear:

The purpose of child support is to promote the best interest of the child; the associated legal obligation of parents is to provide for the reasonable expenses of raising the child. *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984). Indeed, parents have a duty to support their minor children even if it causes them some hardship. *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974). The cost of raising children is a function of several factors including custom, the children's needs and the parents' financial status. *Melzer v. Witsberger,* 505 Pa. at 471, 480 A.2d at 995. It is intended to provide for more than bare necessities. *Id.,* 505 Pa. at 471, 480 A.2d 996.

*Sutliff v. Sutliff,* 515 Pa. 393, 402, 528 A.2d 1318, 1322 (1987). Reasonable expenses are not limited to the bare necessities of life but extend to articles which are reasonably necessary for the proper and suitable maintenance of the child in view of his social station in life and in view of his parents' station in life. *Commonwealth ex rel. Stump v. Church,* 333 Pa.Super. 166, 481 A.2d 1358 (1984); *see*

---

1. The court must first determine the reasonable needs of the child and then the respective abilities of the parents to support their children. *DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508 (1987); *see also Costello v. LeNoir,* 462 Pa. 36, 337 A.2d 866 (1975). We note that the court made no findings as to the needs of the child, or as to the parties' respective incomes and earning capacities.

*also Shank v. Shank,* 298 Pa.Super. 459, 444 A.2d 1274 (1982); *Dunbar v. Dunbar,* 291 Pa.Super. 224, 435 A.2d 879 (1981).

## B.

Among the bare necessities of a child's life is a home. The trial court here excluded from its consideration the fact that appellant's mortgage payments secure a home for her child. We are aware that the mortgage payments also secure a home for the appellant, but the trial court erred when it based its decision upon the determination that the mortgage "would have been incurred absent the presence of the daughter." The trial court was not called upon to speculate as to what appellant's lifestyle would or would not be if she did not have custody of her child.[2] The court need only determine what constitutes the bare necessities and the reasonable expenses appellant incurs because she does have custody of that child. *Sutliff, supra.*

■ We hold that a portion of reasonable mortgage payments are necessary expenditures for the support of a child, as would be a portion of reasonable rental payments under other circumstances.[3] *See Shapera v. Levitt,* 260 Pa.Super. 447, 394 A.2d 1011 (1978) (a support order necessarily includes a reasonable amount for the maintenance of the

2. That the trial court engaged in speculation is apparent from an examination of the record. There is no evidence present on the record to suggest that appellant's home is unduly luxurious in light of her station in life or the needs of her child. For instance, had appellant purchased a property after the divorce which was beyond her means, the trial court's determination would not be mere speculation and our holding might be different.

3. While we do not wish to imply that it is necessary for every child to live in a mortgaged home, we do note that a child's station in life is dependent to some degree upon where he or she lives. Where parents, prior to divorce, are financially capable of maintaining a mortgaged home, their child enjoys a relatively secure station in life. All too often divorce destroys this economic security when the home is sold; thus the child's station in life is reduced. *See* L. Weitzman, *The Divorce Revolution* (1985). We see no reason to reduce appellant or her child's station in life by excluding a portion of the mortgage payments from court consideration. *Stump, supra; Shank, supra; Dunbar, supra.*

child's home); *accord Commonwealth ex rel. Turner v. Turner,* 192 Pa.Super. 502, 161 A.2d 922 (1960) (merely paying monthly rental and no more constituted insufficient child support). Similarly, property taxes, insurance costs, and utility fees are merely the necessary and inescapable costs of maintaining that household and providing a sufficiently safe home for a child; they are not unreasonable, luxurious or unnatural expenses. *See e.g. Hartley v. Hartley,* 364 Pa.Super. 430, 528 A.2d 233 (1987) (responsibility for payment of property taxes to be raised in trial court when contemplating modification of support order). The proportion of these expenses that should be allocated to the child's reasonable needs will, of course, depend upon the county guideline formulas, as well as the sound discretion of the trial court. *DeWalt, supra.*

## C.

▉ Likewise, some portion of the costs of maintaining an automobile may also be considered part of the necessary and reasonable expense of raising a child. A safe, efficient, private means of transportation is ordinarily needed to ensure that a child can get to school, to extracurricular activities, to the doctor and the dentist. While a car may primarily serve the parent, the service it provides the child cannot be ignored when examining the necessary and reasonable expenses involved in child-rearing and the child's appropriate standard of living.[4]

## CONCLUSION

Accordingly, we hold that the trial court erred both in limiting consideration of appellant's legitimate expenses associated with raising her child, and in computing the

---

4. In support of our holding, we note Pa.R.C.P. 1910.26 provides a form which courts may use in assessing support obligations. That form includes space for detailing a spouse's expenses. The form specifically identifies mortgage and utility payments, taxes, insurance and automobile payments among the expenses the court may consider when computing a person's support obligations. Thus, we find support in that rule for our holding that those expenses are appropriate considerations when computing child support obligations.

amount of appellee's support obligation without reference to the *Melzer* formula and the applicable county support guidelines. *Melzer, supra; DeWalt, supra;* 23 Pa.C.S.A. § 4322.

Order vacated; case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

TAMILIA, J. files concurring and dissenting opinion.

TAMILIA, Judge, concurring and dissenting:

While I concur in the result reached by the majority, I respectfully dissent because of the heavy reliance the majority would place on the county guidelines pursuant to 23 Pa.C.S.A. § 4322, Support Guidelines. The majority introduces a conflicting view with that of *Ryan v. DeLong,* 371 Pa.Super. 248, 538 A.2d 1 (1987), which holds that guidelines may not be used in a presumptive fashion. In that Opinion, Cirillo, P.J., states:

> *Melzer* adopted a flexible, individualized approach for support cases. Use of the formula forces trial judges to quantify the reasonable needs of the parties involved. It also enables courts to deal with each case in an individualized manner. At the same time, the strictures of the formula insure that similarly situated persons will be treated similarly. This approach is known as "cost sharing." *See* Cassetty, *The Parental Child-Support Obligation* (1983).
>
> •   •   •   •   •
>
> If trial courts simply plug the parties' situation into a support grid, they ignore the requirements of *Melzer.* To insure that an actual dollar figure is determined as to the reasonable needs and expenses of the parents and children the calculated *Melzer* formula must be in the record.
>
> •   •   •   •   •
>
> Failure to adhere to the flexible and individualized approach of *Melzer* is inconsistent with the policies statutorily mandated in § 4322. Individuals have a right to have their situation subjected to particularized scrutiny by a

court. They should not be namelessly plugged into a chart based upon assumptions no one understands. *Id.*, 371 Pa.Superior Ct. at 253–254, 538 A.2d at 3–4.

Here, the majority would require the application of the guidelines despite a full justification of the support Order through the time honored standards of need and ability to pay and application of the formula suggested by *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984).

The history of adjudication in domestic relation support cases prohibited formulas or standardized Orders and in each case there was a requirement that the facts be thoroughly evaluated and a determination be made based upon the individual factors relating to that case. The purpose of a support Order is to determine and secure an allowance for a child which is reasonable and proper for his comfortable support and maintenance, having in view the property income and caring capacity or ability of the parents and the condition or station in life of the parties. *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974). Guidelines became prevalent out of a perceived need to avoid wide disparity in similar cases where the relevant factors were virtually the same. They were not meant to be a substitute for individual evaluation; deviation from the historic standard by unthinking or automatic application of the guidelines at an intersecting point on the petitioner/respondent income grid is not permissible. The automatic imposition of the guidelines creates a presumptive Order and ignores precedent and the teachings of *Melzer, supra. Melzer* was a response to the need to bring order and organization as to how the traditional principles interact and how they should be applied to arrive at an appropriate support Order. If the Order appears well considered, fair and nonconfiscatory, it should stand, notwithstanding a failure of the trial court to refer to the guidelines on the record. Similarly, an Order that is clearly within the guidelines may be disapproved if it appears to be unfair and confiscatory. A careful interpretation of 23 Pa.C.S.A. § 4322, Support Guidelines, reveals as much. This statutory provision supplements but does not

supplant the traditional legal basis upon which support is based. *Conway, supra.* While the *Melzer* formula covers all relevant ground, support guidelines do not.

The concern I have with the majority position, reversing in part for failure to consider the guidelines, is the reading which may be taken by the trial courts and Bar that the guidelines control. This will increase the tendency for automatic imposition of Orders thereby denying due process of law in reaching a fair and reasonable Order by considering all relevant factors necessary to imposition of a support Order. With the heavy volume of family cases, and the pressure to move them quickly, we must guard against procedures and concepts which will deny due process. The same problems were faced in the criminal justice system and resolved without denial of due process; no less is expected of family cases. In the context of a criminal case, the sentencing guidelines have been considered just guidelines, and we have been reluctant to reverse the trial court when the sentence fulfilled the requirement of the entire sentencing code, even though the guidelines were not adhered to.